UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| | | |
|---|---|---|
| HOME DEPOT U.S.A., INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | CASE NO. 0:20cv62424 |
| | ) | |
| AIR PROS, LLC and DOUGLAS ANTHONY PERERA, JR., | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiff Home Depot U.S.A., Inc. ("Home Depot") brings this action for breach of contract and fraud against Defendants Air Pros, LLC ("Air Pros") and Douglas Anthony Perera, Jr. ("Anthony Perera").

## NATURE OF THE ACTION

1. Home Depot contracted with Air Pros to provide heating, ventilation, and air conditioning ("HVAC") installation and repair services to Home Depot's customers. Air Pros breached its contract with Home Depot and engaged in at least two separate schemes to bilk Home Depot and its customers.

2. Air Pros' first fraudulent scheme involved certain warranty and repair work for which Home Depot paid Air Pros directly. After receiving full payment from Home Depot, Air Pros billed Home Depot's customers a second time for the same work. Even worse, Air Pros threatened to place liens on the customer's property if the customer did not immediately pay Air Pros' false charges.

3. Under Air Pros' second scheme, Air Pros and its President, Anthony Perera, conspired to double-bill Home Depot and its customers for the same HVAC services.

4. The parties' agreement required Air Pros to have Home Depot customers pay Home Depot rather than Air Pros. Once Home Depot collected payment, Home Depot would then pay a percentage to Air Pros after Air Pros completed its work.

5. Instead, Air Pros instructed Home Depot customers to arrange payment to Air Pros directly. Perera then used his personal credit card to pay Home Depot. Once Air Pros received its agreed percentage from Home Depot, Perera reversed the credit card charges, causing Defendants to receive the full cost of the job, *plus* Air Pros' agreed percentage.

6. Air Pros' conduct has caused Home Depot to suffer significant financial losses, and it has harmed Home Depot's customer relationships.

7. Home Depot brings this action to recover damages it has suffered because of Air Pros' breach of contract and for Air Pros' and Anthony Perera's fraudulent conduct.

**PARTIES, JURISDICTION AND VENUE**

8. Home Depot U.S.A., Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Atlanta, Georgia.

9. Douglas Anthony Perera, Jr. is an individual, citizen, and domiciliary of the State of Florida. Mr. Perera is Air Pros' President. Upon information and belief, he is both an employee and an agent of Air Pros. Mr. Perera executed the Master Service Provider Agreement by and between Air Pros and Home Depot.

10. Air Pros, LLC is a Florida limited liability company with its principal place of business located at 1705 Whitehall Drive, Davie, Florida 33324 in Broward County. According

to its filings with the Florida Department of State, Division of Corporations, Air Pros can be served through its registered agent "Douglas Perera, Sr." at the address of its principal place of business.

11. Air Pros has two members, Douglas Anthony Perera, Jr. and Douglas Perera, Sr., both of whom are domiciled in and citizens of the State of Florida.

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000.

13. Venue lies in this district because a substantial part of the events that gave rise to this controversy occurred in this district and because Air Pros' principal place of business is located in this district.

## FACTS

**I.   Home Depot and Air Pros entered into a Master Service Provider Agreement.**

14. Home Depot is a home improvement retailer with warehouse stores across the country.

15. In addition to selling home improvement products, Home Depot sells home improvement services to its customers and subcontracts with independent local installers ("Service Providers") to provide such services.

16. Home Depot enters into a Master Service Provider Agreement ("SPA") with each Service Provider to govern their relationship.

17. On or about November 11, 2019, Air Pros became a Service Provider when Home Depot and Air Pros entered into a SPA. Defendant Anthony Perera executed the SPA on behalf of Air Pros as its President.

18. On or about November 22, 2019, Home Depot and Air Pros executed an amendment to the SPA setting forth the terms and conditions for Air Pros' HVAC services and the way Air Pros would bill for its services. This amendment is called the "Addendum." A copy of the SPA with the Addendum is attached hereto as **Exhibit 1**.

19. The SPA incorporates Home Depot's Service Provider Reference Guide ("SPRG"). A true and correct excerpt of the SPRG is attached hereto as **Exhibit 2**. By executing the SPA, Air Pros expressly agreed to the terms of the SPRG. (Ex. 1 at 3, § 3.7.)

20. By executing these contracts, Air Pros agreed to sell, furnish, and install Home Depot-approved HVAC products to Home Depot customers pursuant to the terms and conditions of the SPA and Addendum. (*Id.* at 21.)

21. Air Pros further agreed to fulfill all purchase orders and fulfill all tasks "in a timely, workmanlike, and professional manner in accordance with this SPA" and the applicable purchase order. (*Id.* at 2, § 3.6.)

22. And, unless a purchase order specifies otherwise, Air Pros agreed that it would "at all times provide new materials." (*Id.* at 5, § 4.13.)

23. Likewise, in Section 9 of the SPA, Air Pros "warrant[ed] to The Home Depot that Services will be completed in a timely, good and workmanlike manner, . . . and all materials supplied in connection with the Services will be of good quality and new unless otherwise required or permitted by a Purchase Order, that the Services will be free from defects not inherent in the quality required or permitted, and that the Services will conform to the requirements of the Purchase Order and this SPA." The SPA provides that "Services not conforming to these requirements . . . shall be considered defective ('Defect') and a breach of [Air Pros'] warranty obligations." (*Id.* at 9, § 9.1.)

24. The Addendum required that customers pay Home Depot for the products and services "directly to/in the name of" Home Depot. (*Id.* at 26.) Thus, regardless of how a customer paid (e.g., by credit card, by check, or through third-party financing), Air Pros was required to collect and process these payments on behalf of Home Depot—not for itself.

25. Pursuant to the SPA and SPRG, Air Pros was not entitled to payment from Home Depot until it submitted the proper documents to Home Depot, Home Depot received and processed full payment from the customer, and Home Depot confirmed the customer's satisfaction with the services. (*Id.* at 23, 26; Ex. 2 at 84.)

26. The SPA expressly prohibited Air Pros from attempting to charge Home Depot customers fees or costs not provided for in the customer contract with Home Depot. (Ex. 1 at 24.)

27. The SPA also prohibited Air Pros from using any "information about Customers obtained as a result of [Air Pros'] activities under this SPA, or any other information obtained as a consequence of [Air Pros'] fulfillment of its obligation under this SPA, for any purpose other than necessary to perform Services under this SPA." (*Id.* at 4, SPA § 4.7.)

28. By entering into the SPA, Air Pros expressly "waive[d] any and all right to file or record a lien, claim of lien, stop payment notice, stop notice, security interest, and any other encumbrance against [Home Depot], a [Home Depot] Customer, and the property of a Customer or [Home Depot]." (*Id.* at 3-4, § 4.4.)

29. Section 4.2 of the SPA also required Air Pros to "comply with all applicable federal, state, county, and local laws . . . pertaining to . . . the performance of Services." (*Id.* at 3, § 4.2.)

30. The SPA provides that Georgia law governs "any disputes arising out of or relating to the SPA." (*Id.* at 18, § 18.17.)

**II.     Air Pros violated the SPA and Addendum by demanding payments from Home Depot customers for services Home Depot had already paid to Air Pros.**

31.     In 2019, Home Depot engaged Air Pros to repair defects in another Service Provider's work, at no cost to the customers. Instead, Home Depot agreed to pay Air Pros directly for this repair work.

32.     Air Pros performed the requested repair work for these customers pursuant to the SPA and Addendum.

33.     Air Pros then submitted invoices to Home Depot requesting payment.

34.     Home Depot paid Air Pros in full for these services, including on the jobs listed on **Exhibit 3**.

35.     Despite having received full payment from Home Depot for these services, and in violation of the SPA and the Addendum, Air Pros subsequently mailed these customers written demands for additional payment.

36.     Moreover, Air Pros threatened to place liens on these customers' properties if they refused to remit payment immediately.

37.     Air Pros made these threats wrongfully because Air Pros knew that Home Depot had already paid Air Pros for this work.

38.     Air Pros also knew or should have known that it had no legal authority to issue or threaten liens on Home Depot customers' property because that would violate Section 4.4 of the SPA.

39.     Air Pros has engaged in this pattern of conduct as it relates to at least the three customers identified on **Exhibit 3** and over $16,000 of services.

40. Air Pros' conduct causes irreparable harm to Home Depot's reputation and relationship with its customers, which outweighs any harm to Air Pros if Air Pros ceased engaging in this conduct.

**III. Air Pros and Anthony Perera diverted thousands of dollars of payments from Home Depot to Air Pros and then fraudulently collected additional payments from Home Depot.**

41. Between about January 28, 2020 and February 28, 2020, Air Pros performed HVAC services for at least twenty-one Home Depot customers pursuant to the SPA and Addendum. The total billed cost of these services under the customer agreements exceeded $130,000.

42. Rather than complying with the agreed payment procedures, Air Pros collected payment for these services in its own name.

43. Air Pros and Anthony Perera then paid Home Depot using Mr. Perera's personal credit card.

44. In paying for these services with his personal credit card, Anthony Perera falsely represented to Home Depot that he was relaying customers' full and final payment for the Home Depot services that Air Pros had performed. A chart of these payments, including the purchase order number and date on which the payment cleared (indicating to Home Depot that Home Depot had been paid in full for these services) is attached hereto as **Exhibit 4**. On information and belief, at the time Perera made these payments and representations, he intended to take steps to reverse the charges.

45. Relying on the purported payments that Air Pros or Anthony Perera made using Anthony Perera's credit card, Home Depot paid Air Pros the agreed amount for the sales identified on **Exhibit 4**.

46. After receiving this additional payment, on information and belief, Air Pros coordinated with Anthony Perera to fraudulently file a dispute with Anthony Perera's credit card issuer causing the issuer to reverse the payments made to Home Depot.

47. As a result of this scheme and Defendants' fraudulent conduct, Home Depot received no payment for the services provided to the Home Depot customers referenced on **Exhibit 4**, as required under the SPA, and yet Home Depot paid Air Pros over $115,000.

48. In the end, therefore, Air Pros was able to get more than twice what it was owed for its services.

49. Moreover, Air Pros failed to perform its services in a workmanlike and professional manner. For example, on at least one of the residential jobs listed on Exhibit 4, Air Pros installed a three-year-old HVAC unit typically installed on the roof of commercial property rather than a new HVAC unit appropriate for a residence, as the SPA required. Air Pros then modified this unit to force the installation, causing the unit to run continuously, restrict air flow, and fail to properly cool the home.

50. To remedy this problem, Home Depot authorized another service provider to remove the improperly-installed, old, commercial HVAC system and install a new one, at a cost of $8,895 to Home Depot.

## Count One

**(Breach of Contract against Air Pros)**

51. Home Depot repeats and realleges each and every allegation of paragraphs 1 through 50 as though fully set forth herein.

52. The SPA and Addendum, attached hereto as **Exhibit 1**, together with the SPRG, an excerpt of which is attached as **Exhibit 2**, constitute a valid, binding, and enforceable contract between Home Depot and Air Pros.

53. Home Depot fully performed all its obligations to Air Pros under the SPA and Addendum.

54. Home Depot satisfied all conditions precedent necessary for bringing a breach of contract action against Air Pros.

55. Air Pros breached the SPA and Addendum in at least the following ways:

   a. Air Pros violated Section 4.2 of the SPA by failing to comply with all applicable law in that Air Pros deceptively demanded payment from Home Depot customers to which Air Pros knew it was not entitled.

   b. Air Pros improperly used customer information—including, for example, the customers' names, addresses, and prior billing histories—obtained as a consequence of its activities under the SPA to demand from such customers fees to which Air Pros knew it was not entitled, in violation of Section 4.7 of the SPA. (Ex. 1 at 4, § 4.7; *id.* at 7, § 8.1.)

   c. Air Pros threatened to place fraudulent liens on Home Depot's customers' property, in violation of Sections 4.2 and 4.4 of the SPA. (*Id.* at 3-4, §§ 4.2, 4.4.)

   d. Air Pros charged Home Depot's customers fees for services for which Air Pros had already received payment from Home Depot, thus constituting fees that were not provided for in the customer agreement with Home Depot. (*Id.* at 24.)

   e. Air Pros collected payment for services to/in the name of Air Pros, instead of to/in the name of Home Depot. (*Id.* at 26.)

  f. Air Pros conspired with Anthony Perera to stop payment of charges on his personal credit card to Home Depot, in violation of Section 4.4 of the SPA. (*Id.* at 3-4, § 4.4.)

  g. Air Pros failed to perform its services in a workmanlike and professional manner in violation of Sections 3.6 and Air Pros' warranty obligations in Section 9, and failed to use new materials in its installation, as the SPA and purchase order require, in violation of Section 4.13. (*Id.* at 2, 5, 9, §§ 3.6, 4.13, 9.1.)

56. Air Pros' breaches of the SPA have caused Home Depot substantial damages, including financial damages, as well as damage to Home Depot's reputation and relationship with its customers.

57. Home Depot seeks all relief available to it including, but not limited to, payment in full of the amount due Home Depot pursuant to the customer agreements and SPA, all costs Home Depot incurred to remedy Air Pros' breaches of contract, interest, and Home Depot's attorneys' fees pursuant to Sections 5.4 and 17.5 of the SPA.

58. Home Depot also seeks immediate injunctive relief, prohibiting Air Pros from sending Home Depot's customers invoices, demands, or threats, which cause Home Depot irreparable harm to its reputation and relationship with its customers.

59. The threat of harm to Home Depot's reputation and relationship outweighs any harm that an injunction may cause Air Pros.

60. An injunction prohibiting Air Pros from sending Home Depot's customers invoices, demands or threats will serve the public interest.

## Count Two

### (Fraud against Anthony Perera)

61. Home Depot repeats and realleges each and every allegation of paragraphs 1 through 30 and 41 through 50 as though fully set forth herein.

62. By submitting a credit card payment to Home Depot with his personal credit card for specific transactions, Anthony Perera willfully made false representations to Home Depot that such transactions would be paid fully and irrevocably on behalf of the Home Depot customers referenced in paragraphs 41–44 above and **Exhibit 4**.

63. Anthony Perera made these false representations referenced in the preceding paragraph with the intent to induce Home Depot to pay Air Pros for those services under the terms of the SPA and Addendum, knowing that once Air Pros had been paid, Mr. Perera would stop payment of those charges, resulting in a chargeback.

64. Home Depot justifiably relied on Anthony Perera's misrepresentations to its detriment by paying Air Pros the portion of the payment to which Air Pros contended it was entitled under the terms of the SPA.

65. After receipt of such payment, Mr. Perera disputed the charges on his personal credit card, resulting in a chargeback and significant loss to Home Depot.

66. As a result of Anthony Perera's fraud, Air Pros and Mr. Perera benefited and Home Depot suffered damages in an amount to be determined at trial.

67. Anthony Perera engaged in this fraud with the intent necessary—to include malice—to warrant an award of exemplary damages.

## Count Three

**(Fraud against Air Pros, in the alternative)**

68. Home Depot repeats and realleges each and every allegation of paragraphs 1 through 30 and 41 through 50 as though fully set forth herein.

69. Air Pros, through its agent Anthony Perera, willfully made false representations to Home Depot that, among other things, Anthony Perera's credit card payments to Home Depot would fully and finally satisfy the Home Depot customers' outstanding charges for Air Pros' services provided to those customers, as referenced in paragraphs 41–44 above and **Exhibit 4**.

70. Air Pros made these false representations with the intent to induce Home Depot to pay Air Pros for those services under the terms of the SPA and Addendum. At the time Mr. Perera made the payments, both he and Air Pros knew and intended that Mr. Perera would void the payments once Home Depot paid Air Pros for the jobs.

71. Home Depot justifiably relied on Air Pros' misrepresentations to its detriment by paying Air Pros the portion of the payment to which Air Pros contended it was entitled.

72. After receipt of such payment, Mr. Perera disputed the charges on his personal credit card, resulting in a chargeback and significant loss to Home Depot.

73. As a result of Air Pros' fraud, Air Pros and Mr. Perera benefited and Home Depot suffered damages in an amount to be determined at trial.

## Count Four

**(Indemnification against Air Pros)**

74. Home Depot repeats and realleges each and every allegation of paragraphs 1 through 50, as though fully set forth herein.

75. Under Sections 10.1 and 10.2 of the SPA, Air Pros must indemnify Home Depot for any losses, damages, costs, and expenses, including attorney's fees, to the extent they arise out of or relate to (1) any property loss or damage arising out of or relating to acts or omissions of Air Pros' employees, agents, or representatives or (2) the noncompliance of any applicable laws by an Air Pros owner, officer, employee or representative. (SPA at 10, §§ 10.1 and 10.2(c), (d).)

76. Anthony Perera is an officer, employee, and agent of Air Pros.

77. Air Pros is liable to Home Depot under Sections 10.1 and 10.2 for losses Home Depot incurred, to be determined at trial, that resulted from the wrongful acts of Air Pros and Anthony Perera's described herein.

## Count Five

**(Breach of Contract/Audit)**

78. Home Depot repeats and realleges each and every allegation of paragraphs 1, 8 through 20, and 52 through 54 as though fully set forth herein.

79. Section 18.10 of the SPA states: "The Home Depot or its designated agent(s) may during the Term and for a period of three (3) years following the termination or expiration of this SPA, audit during normal business hours with or without advance notice all books and records of [Air Pros] that are of direct relevance to [Air Pros'] fulfillment of its obligations under this SPA."

80. On or about August 28, 2020, Home Depot notified Air Pros via email and certified mail that it requested immediate access to all books and records relevant to Air Pros' fulfillment of its obligations under the SPA pursuant to Section 18.10.

81. Air Pros failed to allow Home Depot access to its books and records in violation of Section 18.10.

82. Home Depot seeks an order compelling Air Pros to immediately comply with Home Depot's request, pursuant to Section 18.10 as well as all relief available to it including, but not limited to, payment of its fees and expenses, including attorneys' fees, incurred in bringing this claim.

## Count Six

**(Bad Faith and Stubborn Litigiousness, O.C.G.A. § 13-6-11)**

83. Home Depot repeats and realleges each and every allegation of paragraphs 1 to 50, and 79 through 81 as if fully set forth herein.

84. Air Pros and Anthony Perera have acted in bad faith, been stubbornly litigious, and caused Home Depot unnecessary trouble and expense.

85. Home Depot is entitled to its expenses of litigation, including reasonable attorneys' fees, under O.C.G.A. § 13-6-11.

## DEMAND FOR JURY TRIAL

Home Depot respectfully requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Home Depot U.S.A., Inc. respectfully prays for judgment as follows:

(a) The Court enter judgment in favor of Home Depot and against both Defendants in an amount to be determined at trial;

(b) The Court award exemplary damages against both Defendants;

(c) The Court award Home Depot its expenses of litigation, including attorneys' fees and costs;

(d) The Court enter a preliminary and permanent injunction ordering Air Pros to cease any collection activity on Home Depot projects, in violation of the SPA;

(e) The Court enter an order compelling Air Pros to comply with Section 18.10 of the SPA by allowing Home Depot access to the relevant books and records;

(f) The Court award Home Depot pre-judgment and post-judgment interest; and

(g) The Court award such other and further relief as the Court deems just and appropriate under the circumstances.

*Signature follows on the next page.*

Dated:  November 25, 2020	Respectfully submitted,


/s/ *Peter J. Klock, II*
Brett M. Amron, Esq.
Florida Bar Number 148342
Peter J. Klock, II, Esq.
Florida Bar Number 103915
**BAST AMRON LLP**
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, Florida 33131
Telephone: 305.379.7904
Facsimile: 305.379.7905
Email: bamron@bastamron.com
Email: pklock@bastamron.com

Ronan P. Doherty
Georgia Bar No. 224885
Michael R. Baumrind
Georgia Bar No. 960296
**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
Email: doherty@bmelaw.com
Email: baumrind@bmelaw.com

***Attorneys for Plaintiff Home Depot U.S.A., Inc.***