**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

| | | |
|---|---|---|
| HOME DEPOT U.S.A., INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | CASE NO. 0:20-cv-62424-KMM |
| | ) | |
| AIR PROS, LLC and DOUGLAS ANTHONY PERERA, JR., | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) ) | |

**HOME DEPOT U.S.A., INC.'S BRIEF IN SUPPORT
OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Air Pros, LLC ("Air Pros") has engaged in a pattern of misconduct to double-bill Home Depot U.S.A., Inc.'s ("Home Depot") customers for Air Pros' HVAC repair services. Air Pros performed repair work for these customers pursuant to a contract with Home Depot, and Home Depot paid Air Pros in full for its work. But after pocketing that money, Air Pros returned to Home Depot's customers to demand more, sending false and confusing bills that required the customers to pay a second time for the same work. Worse, Air Pros threatened to put liens on the property of customers who didn't pay immediately, even though the parties' agreement prohibits any such liens.

Home Depot has received complaints from at least three customers about this misconduct, and it is concerned that many more customers may have fallen victim to Air Pros' tactics. In addition to victimizing innocent customers, Air Pros' conduct violates its agreement with Home Depot in at least three ways. For these reasons, Home Depot asks this Court to enter a preliminary injunction to stop Air Pros from harassing Home Depot's customers with false invoices.

*First*, Air Pros agreed to comply with all applicable laws when it contracted with Home Depot. But by using false and deceptive means to collect a debt these customers don't owe— including by threatening collection activity that violates the agreement—Air Pros' conduct violates various consumer protection laws. And for those customers who lost money to this scheme, Air Pros' conduct amounts to fraud.

*Second*, Air Pros' double-billing scheme violates the agreement's prohibition on "attempt[ing] to charge Customer fees or costs not provided for in the Customer's agreement with" Home Depot. For the customers at issue on this motion, Home Depot had agreed to charge the customer nothing for this repair work because Home Depot had agreed to foot the bill. Air Pros' false invoices, therefore, sought to charge these customers unsanctioned fees in violation of the agreement.

*Third*, Air Pros' conduct violates the contract's confidentiality provision, which prohibits Air Pros from using customer information unless necessary to perform its services. By using customer contact information and service history to dupe customers into paying amounts they do not owe, Air Pros breached this provision as well.

Finally, Air Pros' conduct has caused irreparable harm to Home Depot's reputation and relationship with its customers. This conduct appears likely to continue absent a court order. Because Air Pros would suffer no injury if it stops breaching the parties' agreement, and because preventing this type of fraudulent conduct benefits the public, this Court should grant Home Depot's Motion for Preliminary Injunction.

**FACTUAL BACKGROUND**

I.  **Home Depot contracted with Air Pros to provide HVAC services to Home Depot customers.**

In addition to selling home improvement products, Home Depot sells home improvement services, like HVAC repair work, to its customers.[1] To fulfill these services, Home Depot subcontracts the work to local service providers like Air Pros.[2] Air Pros, however, did not last long as a Home Depot service provider. And as the parties' relationship came to a close, Air Pros repeatedly violated the parties' agreement and attempted to secure double payment for its work.

In November 2019, Home Depot and Air Pros entered into a Master Service Provider Agreement ("SPA") to govern their relationship.[3] An "Addendum" to the SPA addresses specific features of Home Depot's HVAC program.[4] The SPA also incorporates Home Depot's Service Provider Reference Guide ("SPRG"), which provides additional terms and conditions to ensure a smooth experience for Home Depot, Air Pros, and most importantly, Home Depot's customers.[5] Defendant Douglas Anthony Perera, Jr. ("Anthony Perera") signed the SPA and the Addendum on Air Pros' behalf as its President.[6]

Under the SPA, customers do not pay Air Pros directly for its services. Instead, the customer makes a payment "directly to/in the name" of Home Depot. Where Air Pros collects

---

[1] Declaration of Rick Mongeau ("Mongeau Decl.") ¶ 4. Mr. Mongeau's declaration is attached to the motion as **Exhibit 1**.

[2] *Id.* ¶ 5.

[3] *Id.* ¶ 6; *id.* Ex. A (the "SPA").

[4] Mongeau Decl. ¶ 7; SPA at 20-29.

[5] Mongeau Decl. ¶ 8; SPA at 3, § 3.7; Mongeau Decl. Ex. B (the "SPRG").

[6] SPA at 19; *see also id.* at 29.

payment from a customer, Air Pros must then pass the customer's payment along to Home Depot.[7] Once Air Pros has done so and has uploaded the proper paperwork to a web portal confirming that the job is complete, Home Depot processes the payment and marks the project, "Paid in Full."[8] Finally, Home Depot pays Air Pros for its services, which for some of the jobs at issue in this case—but not in this motion—involved an agreed percentage of the total cost of the job.[9]

For other jobs, where Home Depot has agreed to fund the repairs to correct customer problems, the customer makes no payment.[10] In those situations, Home Depot pays Air Pros for its work and Air Pros has no basis to collect anything from the customer.[11] This second category of repair jobs are the subject of this motion for injunctive relief.

The SPA restricts Air Pros' conduct in relation to Home Depot's customers in various ways. For example, under the Addendum, Air Pros "may not display, give to, or leave with, the Customer any documents, paperwork, [or] contracts . . . that have not been reviewed and approved by The Home Depot."[12] Moreover, "[u]nder no circumstances" may Air Pros "attempt to charge Customer fees or costs not provided for in the Customer's agreement with The Home Depot."[13] Nor may Air Pros file or threaten to file liens on any of the Home Depot's customers' property because under § 4.4 of the SPA, Air Pros "waive[d] any and all right to file or record a lien, claim of lien, stop payment notice, stop notice, security interest, and any other encumbrance against . . .

---

[7] SPA at 26; *see also* SPRG at 85 ("Only checks made out to THD are acceptable. Do not have the customer make the check payable to your company.").

[8] SPRG at 80, 84.

[9] SPA at 23.

[10] *See* Mongeau Decl. ¶ 10.

[11] *Id.*

[12] SPA at 24.

[13] *Id*.

a [Home Depot] Customer[] and the property of a Customer."[14]  And in all of Air Pros' interactions with Home Depot's customers, Air Pros agreed to "comply with all applicable federal, state, county, and local laws."[15]

Finally, the SPA prohibits Air Pros from using any "information about [Home Depot's] Customers obtained as a result of [Air Pros'] activities under this SPA, or any other information obtained as a consequence of [Air Pro's] fulfillment of its obligations under this SPA, for any purpose other than as necessary to perform Services under this SPA."[16]  This provision survives for three years after the termination of the SPA.[17]  And Air Pros "agree[d] that immediate, irreparable harm could result to The Home Depot and its business if [Air Pros] or its Subcontractors breach their obligations in this Section."[18]  For this reason, Air Pros also "agree[d] that [Home Depot] will be entitled to a restraining order, injunction or other equitable relief if [Air Pros] or its Subcontractors breach their obligations under this Section, in addition to any other remedies available at law or equity."[19]

**II.   Air Pros breached the SPA and, along with Mr. Perera, committed fraud.**

Air Pros and its president Anthony Perera flouted the SPA's terms and engaged in fraud so Air Pros could double bill for its services at Home Depot's expense.  This case involves two such schemes intended to bilk Home Depot and its customers.

---

[14] SPA at 3-4 § 4.4.

[15] SPA at 3 § 4.2.

[16] SPA at 4 § 4.7.

[17] *Id.*

[18] *Id.*

[19] *Id.*

00629623.DOCX3

The first scheme attempts to defraud Home Depot's customers by falsely billing them for work that Home Depot has already paid for in full. In those cases, Home Depot engaged Air Pros to repair defects in another service provider's work, at no cost to the customers.[20] For those jobs, Home Depot simply agreed to pay Air Pros for this work upon completion of the repairs.[21] In other words, under the agreement between Home Depot and the customer, no one was to collect any payment from the customer for these services.[22]

Air Pros provided the services as requested, and Home Depot paid Air Pros in full.[23] But then, Air Pros went back to the customer with a false invoice demanding a second payment.[24] What's more, Air Pros also threatened to file liens on the customers' property if they didn't pay immediately.[25]

Home Depot discovered this conduct because several customers have complained to Home Depot about it. One woman—Customer 1—received a voicemail from Air Pros demanding immediate payment, despite that Home Depot had already paid Air Pros.[26] Customer 1 also received a bill in the mail for the same amount Air Pros charged and collected from Home Depot.[27] On the outside of the envelope, in big red letters, Air Pros demanded immediate payment from the customer "to avoid property lien":[28]

---

[20] Mongeau Decl. ¶ 10; *see also id.* Ex. C.
[21] Mongeau Decl. ¶ 10.
[22] *Id.*
[23] *Id.* ¶ 11.
[24] *Id.* ¶¶ 13-17.
[25] *Id.*
[26] *Id.* ¶ 14.
[27] *Id.*
[28] *Id.*; *id.* Ex. D-1.



This customer called Home Depot to complain and made clear that she and her husband were upset to receive a bill for repair work that Home Depot had agreed to provide free of charge.[29]

Customer 2 received a similar letter expressing Air Pros' intent to place a lien on her property if she failed to pay the bill immediately. She also contacted Home Depot to complain.[30]

Customer 3 received a call from someone named "Chris" at Air Pros demanding payment for its services.[31] "Chris" told her that if she didn't pay immediately, Air Pros would send her to collections.[32] This customer, too, complained to Home Depot about this conduct.[33]

Home Depot did not review or approve any of these false and misleading communications.[34]

In addition to these complaining customers, there are over 70 customers for whom Air Pros performed services under the SPA since November 2019.[35] Given Air Pros' brazen conduct to

---

[29] *Id.* ¶ 14.
[30] *Id.* ¶ 15.
[31] *Id.* ¶ 16.
[32] *Id.*
[33] *Id.*
[34] *Id.* ¶ 17.
[35] *Id.* ¶ 18

00629623.DOCX3

date, Home Depot is concerned that many of these customers will have received, or will in the future receive, similar, improper correspondence from Air Pros, causing irreparable damage to Home Depot's reputation and customer relationships.[36]

Besides pestering these customers with false invoices for repair work, Air Pros engaged in a second scheme to defraud Home Depot on a series of other jobs. For about a month in February 2020, Air Pros provided HVAC services to Home Depot customers under the SPA.[37] The total billed cost of these services exceeded $130,000.[38] Rather than complying with the SPA's payment procedures that required Air Pros to collect payment in Home Depot's name, Air Pros collected payment for these services in its own name.[39] Air Pros and Mr. Perera then paid Home Depot for those jobs using Mr. Perera's personal credit card, tying these payments to the specific jobs it completed.[40] After Home Depot processed the payment, it paid Air Pros about $115,000 for its work according to the SPA.[41]

But shortly after Air Pros received its payment, Mr. Perera disputed the charges on his personal credit card, resulting in a "chargeback" where the credit card issuer reversed payments made to Home Depot and left Home Depot unpaid.[42] Thus, Air Pros collected more than double what it was owed—$115,000 from Home Depot under the terms of the SPA and an additional $130,000 from the customers.[43] Home Depot has brought claims for the damages suffered as a

---

[36] *Id.* ¶ 19.
[37] Compl., ECF No. 1, ¶ 38.
[38] *Id.*
[39] *Id.* ¶ 39.
[40] *Id.* ¶¶ 40-41.
[41] *Id.* ¶ 44.
[42] *Id.* ¶ 43.
[43] *Id.* ¶ 45.

result of this scheme. But as this fraud is already complete, Home Depot does not seek injunctive relief on this claim.

### III.  Home Depot sued Air Pros for damages and injunctive relief.

Home Depot filed this lawsuit against Air Pros and Mr. Perera seeking damages and injunctive relief. In addition to its fraud claims against Mr. Perera and Air Pros based on the fraudulent chargeback conduct, Home Depot brought a breach of contract claim against Air Pros.[44] The contract claim alleges various breaches based on the fraudulent chargeback conduct and the improper collections activity.[45] This motion seeks injunctive relief related to the improper collections activity.

## ARGUMENT AND CITATION TO AUTHORITY

Home Depot requests a preliminary injunction to prohibit Air Pros from engaging in any further collection activity—including demanding payment, sending invoices, or threatening liens—against any Home Depot customer to whom Air Pros provided services under the SPA. The Court should grant a preliminary injunction because Home Depot can show "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse

---

[44] *Id.* at 7-11, Count 1 (Breach of Contract) and Counts 2-3 (Fraud).

[45] *Id.* ¶ 50. Home Depot also included an indemnification claim against Air Pros under §§ 10.1 and 10.2 of the SPA. This section requires Air Pros to indemnify Home Depot for any "losses" Home Depot incurs "relating to or arising out of any services provided by [Air Pros] or any of its subcontractors, employees, officers, agents, or representatives." SPA at 10, § 10.1. And Home Depot brought a claim for an accounting under Section 18.10 of the SPA. Finally, Home Depot brought a claim for attorneys' fees under O.C.G.A. § 13-6-11, a Georgia statute which applies here under the SPA's choice of law provision. *See* SPA at 18, § 18.17.

to the public interest."[46] Moreover, an injunction serves the public interest to prevent Air Pros from falsely harassing Home Depot's innocent customers.

**I.       Home Depot is substantially likely to prevail on the merits of its claim.**

Home Depot is substantially likely to succeed on the merits because Air Pros has breached the SPA in at least three ways:

*First*, Air Pros' conduct violates Section 4.4, which requires Air Pros to "comply with all applicable federal, state, county, and local laws."[47] Various consumer protection laws prohibit the type of harassing, confusing, and misleading activity that Air Pros employed. The Florida Deceptive and Unfair Trade Practices Act, for example, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."[48] And if Air Pros has successfully duped customers into paying bills they don't owe, Air Pros has committed common law fraud.[49]

*Second*, Air Pros' actions violate the SPA's provision restricting Air Pros from billing customers without Home Depot's approval. The Addendum expressly prohibits Air Pros from "attempt[ing] to charge Customer fees or costs not provided for in the Customer's agreement with [Home Depot]."[50] It also prohibits Air Pros from "giv[ing] . . . the Customer *any* documents, paperwork, [or] contracts" that "have not been reviewed and approved by [Home Depot]."[51] Here, Air Pros sent customers invoices for charges that were not provided in any agreement between the customer and Home Depot. In fact, Home Depot charged these customers nothing for Air Pros'

---

[46] *BellSouth Telecomms., Inc.* v. *MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 968 (11th Cir. 2005).

[47] SPA at 3, § 4.2.

[48] § 501.204, Fla. Stat. (2019).

[49] *See Townsend v. Morton*, 36 So. 3d 865, 868 (Fla. 5th DCA 2010).

[50] SPA at 24.

[51] *Id.* (emphasis added)

repair work. And of course, Home Depot never reviewed and approved Air Pros' threatening letters and false invoices.[52]

*Third*, Air Pros' collections activity violated § 4.7 of the SPA, which restricts Air Pros' ability to use customer information for improper purposes. Under this provision, any customer information that Air Pros obtained "as a consequence of [its] fulfillment of its obligations under this SPA" is confidential.[53] This would include the customer's name, address, previous service history, and previous charges.[54] Air Pros is free to use this information only if "necessary to perform Services under this SPA."[55] But Air Pros used this information to generate false invoices, demanding payment for the same services for which it already received payment from Home Depot. Air Pros also exploited this information to threaten to file liens on customers' property—something Section 4.4. of SPA prohibits.[56] Conduct like this cannot be "necessary" for the performance of services "under this SPA," because the SPA prohibits it.

Air Pros' breach of contract is clear, and Home Depot, therefore, is substantially likely to prevail on the merits of this claim.

## II.     Home Depot will suffer irreparable harm unless this Court issues the requested injunction.

If allowed to continue, Air Pros' breach of contract will cause Home Depot irreparable harm. In *Ferrero v. Associated Materials Inc.*, the Eleventh Circuit held the "loss of customers

---

[52] Mongeau Decl. ¶ 17.

[53] SPA at 4, § 4.7.

[54] Mongeau Decl. ¶ 12 (testifying that Air Pros obtained the customers' names, addresses, and service history as a result of its fulfillment of its obligations under the SPA); *see also Durham v. Stand-By Labor of Ga., Inc.*, 230 Ga. 558, 564, 198 S.E.2d 145, 150 (1973) (holding that customers' names and addresses are "often highly confidential and constitute[] a valuable asset").

[55] SPA at 4, § 4.7.

[56] Mongeau Decl. ¶¶ 14–15; SPA at 3–4, § 4.4.

and goodwill is an 'irreparable' injury.'"[57]  And courts routinely find that the improper use of confidential information causes irreparable harm when it confuses customers or damages the plaintiff's reputation.[58]  Moreover, the parties' acknowledgement in a contract that a breach will cause irreparable harm tends to show that irreparable harm is likely.[59]

Air Pros' breach of contract has created a wave of customer confusion and frustration. Several customers have already contacted Home Depot and expressed frustration, concern, and confusion about Air Pros' demands.[60]  This terrible customer experience has an unquantifiable negative impact on Home Depot's relationship with these customers.[61]  Avoiding these types of customer friction points is the entire point of the SPA and the SPRG, which provide specific procedures for how a service provider will bill customers for work on Home Depot jobs.[62]  And this is precisely the type of injury the parties contemplated when they "agree[d] that immediate, irreparable harm could result to The Home Depot and its business if [Air Pros] or its Subcontractors breach their obligations in this Section."[63]  The parties' acknowledgement that a breach like this

---

[57] 923 F.2d 1441, 1449 (11th Cir. 1991).

[58] *MEDai Inc. v. Quantros, Inc.*, No. 6:12-CV-840-ORL-37, 2012 WL 3542412, at *6 (M.D. Fla. Aug. 16, 2012) (customer confusion); *Warrior Trading, Inc. v. Jaffee*, No. 1:19-CV-20121-JLK, 2019 WL 3428509, at *4 (S.D. Fla. Jan. 23, 2019) (reputational injury) (collecting cases).

[59] *E.A. Renfroe & Co. v. Moran*, 249 F. App'x 88, 93 (11th Cir. 2007) (affirming the entry of a preliminary injunction based, in part, on the parties' contractual acknowledgement that a breach of confidentiality will cause irreparable harm); *see also Bijou Salon & Spa, LLC v. Kensington Enters., Inc.*, 283 Ga. App. 857, 643 S.E.2d 531, 534 (2007); *Travelers Cas. & Sur. Co. of Am. v. Design Build Eng'rs & Contractors, Corp.*, No. 6:14-CV-1636-ORL-31, 2014 WL 7274803, at *5 (M.D. Fla. Dec. 22, 2014); *Wine Not, Int'l v. 2atec, LLC*, No. 8:06-CV-117-T-23, 2006 WL 1766508, at *10 (M.D. Fla. June 26, 2006).

[60] Mongeau Decl. ¶¶ 14–16.

[61] *See MEDai Inc.*, 2012 WL 3542412, at *6 (customer confusion causes irreparable harm).

[62] *See, e.g.*, SPA at 26; SPRG at 81–89.

[63] SPA at 4, ¶ 4.7.

would cause irreparable harm and the evidence that this has already happened together demonstrate irreparable harm to Home Depot.[64]

## III. Air Pros faces no harm if the Court issues the requested injunction.

By contrast, a preliminary injunction that holds Air Pros to the SPA's terms and prevents Air Pros from harassing Home Depot's customers with false bills and threatened liens causes no harm to Air Pros. In *Winmark Corp. v. Brenoby Sports, Inc.*, another court in this district held that a party "that has breached the terms of its [contract] cannot then complain of harm from an injunction preventing further violations of the agreement."[65] Under the SPA, Air Pros has no right to bill Home Depot's customers, no right to threaten liens, and no right to exploit confidential customer information to harass Home Depot's customers.[66] Nor is Air Pros permitted to send Home Depot's customers unsanctioned bills for services.[67] In fact, under the SPA, Air Pros shouldn't send *any* of its own invoices to Home Depot customers.[68] Thus, an order prohibiting Air Pros from doing what the contract expressly forbids poses no threat of injury to Air Pros.

## IV. The injunction will not be adverse to the public interest.

Finally, the requested injunctive relief furthers the public interest for two reasons:

*First*, as the Eleventh Circuit has held, "the public interest is served by preventing consumer confusion in the marketplace."[69] The Florida legislature also has announced that the

---

[64] *See, e.g.*, *E.A. Renfroe & Co.*, 249 F. App'x at 93.

[65] *Winmark Corp. v. Brenoby Sports, Inc.*, 32 F. Supp. 3d 1206, 1224 (S.D. Fla. 2014); *accord Int'l Fidelity Ins. Co. v. Talbot Constr., Inc.*, No. 1:15-CV-3969-LMM, 2016 WL 8814367, at *9 (N.D. Ga. Apr. 13, 2016) (holding that any harm resulting from enforcing a valid agreement does not outweigh harm to the movant).

[66] SPA at 4, § 4.7; *id.* at 7, § 8.1.

[67] SPA at 4, § 4.7; *id.* at 24.

[68] SPA at 24.

[69] *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001).

public has an interest in "protect[ing] the consuming public . . . from those who engage in . . . unconscionable, deceptive, or unfair acts or practices" in their business.[70] Air Pros' misconduct has already led several customers to complain to Home Depot about Air Pros' deceptive bills and its threats to put lien on their properties. Countless other customers face the same threat of confusion if the Court allows Air Pros to continue its fraudulent behavior. And worse, some of these consumers might be duped into paying amounts they do not owe. Accordingly, the requested injunction furthers the public interest by curtailing Air Pros' misconduct, which harms the public.

*Second*, as one court in this district held, "it is in the public's interest to uphold the law."[71] The Eleventh Circuit similarly has noted that: "There is a strong public policy in favor of enforcing contracts as written and agreed upon."[72] Home Depot simply seeks an order enforcing the parties' contract as written. Because that will protect Home Depot and its customers, without inflicting any prejudice on Air Pros, an injunction will further the public interest.

## CONCLUSION

Home Depot respectfully requests an injunction ordering Air Pros to cease improper collections activity in connection with services it performed under the SPA. The requested injunction would prohibit Air Pros from continuing to breach the parties' agreement, which not only causes Home Depot irreparable harm but also injures innocent consumers by potentially

---

[70] § 501.202(2), Fla. Stat. (2019).

[71] *Marine Turbo Eng'g, Ltd. v. Turbocharger Servs. Worldwide, LLC*, No. 11-60621-CIV, 2011 WL 6754058, at *11 (S.D. Fla. Dec. 22, 2011).

[72] *Eco Sols., LLC v. Verde Biofuels, Inc.*, 518 F. App'x 790, 792 (11th Cir. 2013) (quoting *Daniel v. Daniel*, 250 Ga. 849, 301 S.E.2d 643, 645 (1983)); *accord Charles Schwab & Co. v. Aviles*, No. 07-21745-CIV, 2007 WL 9702744, at *9 (S.D. Fla. Aug. 23, 2007) ("It is well-settled that public policy favors the enforcement of reasonable restrictive covenants."), *report and recommendation approved sub nom. Charles Schwab & Co. v. Aviles*, No. 07-21745-CV, 2007 WL 9702745 (S.D. Fla. Nov. 28, 2007) (citing, *inter alia*, Fla. Stat. § 542.335).

duping them into paying amounts they do not owe.  This threatened injury to Home Depot and its customers far outweighs any harm to Air Pros should the Court enter the injunction; indeed, Air Pros faces no harm from an injunction that holds Air Pros to the terms of the parties' agreement. Finally, the injunction would further the public interest by enforcing a valid contract and protecting innocent third parties from fraudulent collection activity.  For the Court's convenience, a proposed order is attached to the motion as **Exhibit 2**.

Dated:  November 30, 2020

Respectfully submitted,

/s/ *Peter J. Klock, II*
Brett M. Amron
Florida Bar Number 148342
Peter J. Klock, II
Florida Bar Number 103915
**BAST AMRON LLP**
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, Florida 33131
Telephone: (305) 379-7904
Facsimile: (305) 379-7905
Email: bamron@bastamron.com
Email: pklock@bastamron.com

Ronan P. Doherty
Georgia Bar No. 224885
Michael R. Baumrind
Georgia Bar No. 960296
**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
Email: doherty@bmelaw.com
Email: baumrind@bmelaw.com

*Attorneys for Plaintiff Home Depot U.S.A., Inc.*